**No. 2024-2174**

**IN THE**
# United States Court of Appeals
**FOR THE FEDERAL CIRCUIT**

INTELLECTUAL PIXELS LIMITED,

*Appellant,*

*v.*

SONY INTERACTIVE ENTERTAINMENT, LLC,

*Appellee*.

APPEAL FROM THE U.S. PATENT OFFICE, PATENT TRIAL AND APPEAL BOARD
No. IPR2021-00237

**REPLY BRIEF FOR APPELLANT**
**INTELLECTUAL PIXELS LIMITED**

MICHELLE E. ARMOND
JOSEPHER LI
**ARMOND WILSON LLP**
4685 MacArthur Court, Suite 390
Newport Beach, CA 92660
Tel: (949) 932-0778

DOUGLAS R. WILSON
**ARMOND WILSON LLP**
13785 Research Blvd., Suite 125
Austin, Texas 78750
Tel: (512) 267-1663

*Attorneys for Appellant*
*Intellectual Pixels Limited*

March 12, 2025

# CERTIFICATE OF INTEREST

Counsel for Appellant Intellectual Pixels Limited hereby certifies the following:

1. The full name of every entity represented in the case by the counsel filing the certificate:

Intellectual Pixels Limited

2. For each entity, the name of every real party in interest, if that entity is not the real party in interest:

Not Applicable

3. For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock:

Not Applicable

4. The names of all law firms and the partners or associates that have not entered an appearance in the appeal, and (a) appeared in the lower court tribunal; or (b) are expected to appear for the entity in this court:

Forrest M. McClellen

5. Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

*Intellectual Pixels Ltd. v. Sony Interactive Entertainment LLC*, No. 8:20-cv-01422 (C.D. Cal. filed July 31, 2020)

6. All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases:

Not Applicable

ARMOND WILSON LLP

Dated: March 12, 2025

By: /s/ *Douglas R. Wilson*
Douglas R. Wilson

*Attorney for Appellant*
*Intellectual Pixels Limited*

# TABLE OF CONTENTS

**Page No.**


CERTIFICATE OF INTEREST ........................................................ i

I. INTRODUCTION ........................................................ 1

II. ARGUMENT ........................................................ 2

A. Sony Attacking A Strawman Does Not Distract From Its Untenable Position On Appeal ........................................................ 2

B. Sony Has No Authority Excusing It From Challenging The Factual Findings During The First Appeal ........................................................ 2

C. Sony Fails To Show The Two Findings Are Outside The Judgment And Not Subject To The Mandate Rule ........................................................ 6

1. Both Findings Are Expressly Included In The Board's First Final Written Decision And Subject To The Mandate Rule ........................................................ 6

2. Neither Finding Was Reversed On Appeal ........................................................ 7

a. First Finding: Sony Failed To Challenge It And Even Discouraged Appellate Review ........................................................ 7

b. Second Finding: This Court Acknowledged And Did Not Disturb It ........................................................ 11

D. Reversal Is Required Because The Board Could Not Have Found Wiltshire Disclosed The "Compressing" Limitation Had It Followed The Mandate ........................................................ 12

E. Sony Musters No Substantial Evidence Supporting The Board's New Unpatentability Determination In The Second Final Written Decision ........................................................ 14

1. Sony Offers No Substantial Evidence ........................................................ 15

**TABLE OF CONTENTS**
**(Cont'd)**

**Page No.**

2. Sony Fails To Rebut IPL's Arguments On The Lack of Substantial Evidence ............................................ 16

III. CONCLUSION ........................................................................................ 23

# TABLE OF AUTHORITIES

**Page No(s).**

*Amado v. Microsoft Corp.*,
517 F.3d 1353 (Fed. Cir. 2008)........................................................ 6, 7, 10

*Amoco Oil v. United States*,
234 F.3d 1374 (Fed. Cir. 2000)................................................................ 10

*Ariosa v. Verinata Health*,
805 F.3d 1359 (Fed. Cir. 2015)................................................................ 20

*Atlanta Gas Light v. Bennett Regulator Guards*,
33 F.4th 1348 (Fed. Cir. 2022) ................................................................... 2

*Bitmanagement Software v. United States*,
124 F.4th 1368 (Fed. Cir. 2025) ......................................................... 3, 4, 5

*Cardiac Pacemakers v. St. Jude Medical*,
576 F.3d 1348 (Fed. Cir. 2009) ............................................................... 10

*CardSoft v. VeriFone*,
807 F.3d 1346 (Fed. Cir. 2015) ................................................................. 9

*Doe v. United States*,
463 F.3d 1314 (Fed. Cir. 2006)........................................................ 6, 7, 10

*Engel Indus. v. Lockformer Co*,
166 F.3d 1379 (Fed. Cir. 1999)............................................................ 6, 10

*Exxon Chem. Patents v. Lubrizol*,
137 F.3d 1475 (Fed. Cir. 1998)................................................................... 2

*Hayward Indus. v. Pentair Water Pool & Spa*,
814 F. App'x 592 (Fed. Cir. 2020) .......................................................... 11

*HPI/GSA 3C, LLC v. Perry*,
364 F.3d 1327 (Fed. Cir. 2004) ......................................................... 10, 11

## TABLE OF AUTHORITIES
## (Cont'd)

**Page No(s).**

*Icon Health & Fitness v. Strava*,
849 F.3d 1034 (Fed. Cir. 2017) .................................................................. 16

*Integrated Technology v. Rudolph Technologies*,
629 F. App'x 972 (Fed. Cir. 2015) .................................................................. 5

*Intel Corp. v. PACT XPP Schweiz*,
No. 2023-1537, 2024 WL 5068112 (Fed. Cir. Dec. 11, 2024)............ 15, 21

*Laitram v. NEC*,
115 F.3d 947 (Fed. Cir. 1997)........................................................................ 2

*In re Magnum Oil Tools Int'l*,
829 F.3d 1364 (Fed. Cir. 2016)................................................................... 22

*Medtronic v. Teleflex Life Scis.*,
No. 2022-1605, 2024 WL 1208642 (Fed. Cir. Mar. 21, 2024)............ 20, 21

*New Hampshire v. Maine*,
532 U.S. 742 (2001)........................................................................................ 9

*In re NTP*,
654 F.3d 1279 (Fed. Cir. 2011)................................................................... 16

*OSI Pharms. v. Apotex*,
939 F.3d 1375 (Fed. Cir. 2019)................................................................... 19

*In re Pardo*,
684 F.2d 912 (C.C.P.A. 1982) ..................................................................... 13

*Philip Morris Prods. v. Int'l Trade Comm'n*,
63 F.4th 1328 (Fed. Cir. 2023) .................................................................... 20

*Raxton v. Anania Assocs.*,
668 F.2d 622 (1st Cir. 1982)..................................................................... 3, 5

**TABLE OF AUTHORITIES**
**(Cont'd)**

**Page No(s).**

*Respironics v. Zoll Med.*,
656 F. App'x 531 (Fed. Cir. 2016) .... 3

*Retractable Tech. v. Becton Dickinson*,
757 F.3d 1366 (Fed. Cir. 2014).... 10

*Robotic Vision Sys. v. View Eng'g*,
249 F.3d 1307 (Fed. Cir. 2001).... 5, 10

*Samsung Elecs. v. Infobridge*,
929 F.3d 1363 (Fed. Cir. 2019).... 17

*Sanchez v. Sec'y of Health & Hum. Servs.*,
34 F.4th 1350 (Fed. Cir. 2022) .... 3, 5, 13

*TQ Delta v. CISCO Sys.*,
942 F.3d 1352 (Fed. Cir. 2019).... 22

*United States v. Husband*,
312 F.3d 247 (7th Cir. 2002) .... 7, 10 , 14

*Univ. of Strathclyde v. Clear-Vu Lighting*,
17 F.4th 155 (Fed. Cir. 2021) .... 18

*Williamsburg Wax Museum v. Historic Figures*,
810 F.2d 243 (D.C. Cir. 1987) .... 10

*In re Zurko*,
258 F.3d 1379 (Fed. Cir. 2001) .... 17

*All emphasis in this brief is added unless otherwise noted.*

## I. INTRODUCTION

Sony does not dispute that the mandate rule applies and that the Board was required to follow this Court's mandate. Rather than straightforwardly explaining how the Board followed the mandate, Sony instead attacks strawmen and directly contradicts what it told the Court in the first appeal. Sony could have appealed the Board's factual findings it apparently disagreed with during Appeal 22-2118. Instead, it waited. On remand, Sony badgered the Board to reverse those findings and decide in its favor. Sony's conduct not only amounts to an end-run around the mandate rule, but it thwarts judicial efficiency by needlessly expanding subsequent Board and appellate proceedings.

On the substantial evidence issue, Sony's response does not improve. The opening brief pointed out that the Board's about-face on its prior findings to conclude that Wiltshire met the "compressing" limitation finds no support in Wiltshire's actual disclosure. Instead of simply identifying the substantial evidence, Sony submits thirteen full pages of prose.

Reversal is required because the Board's initial undisturbed findings plainly bar a finding that Wiltshire teaches "compressing" newly generated images, and the mandate rule blocks the Board from annulling them.

## II. ARGUMENT

### A. Sony Attacking A Strawman Does Not Distract From Its Untenable Position On Appeal

Sony's lead appellate argument is that the Court's mandate did not prevent the Board from considering the "compressing" limitation on remand. Red Br. at 32; *id*. at 2–3, 32–33. In support, it submits an essay on the *Exxon* and *Laitram* decisions, and later *Atlanta Gas*. Red Br. at 42–44, 51 (citing *Exxon Chem. Patents v. Lubrizol*, 137 F.3d 1475 (Fed. Cir. 1998); *Laitram v. NEC*, 115 F.3d 947 (Fed. Cir. 1997); *Atlanta Gas Light v. Bennett Regulator Guards*, 33 F.4th 1348, 1355 (Fed. Cir. 2022)).

No one is disputing that. *E.g.*, Blue Br. at 26–29. Sony itself cannot maintain this pretense for long, acknowledging on the next page that: "IPL does not argue that the words of the mandate foreclose consideration of the 'compressing' limitation." Red Br. at 33. While considerably more could be said about this frivolity, IPL will move on from this strawman in the interest of efficiency.

### B. Sony Has No Authority Excusing It From Challenging The Factual Findings During The First Appeal

Parties must challenge all disputed factual findings within the judgment, whether or not they pertained to the legal issues challenged in the first appeal.

As is the situation here, lower courts often make factual findings on various issues, not all of which are necessarily applicable to the dispositive legal issues. *Bitmanagement Software v. United States*, 124 F.4th 1368, 1372, 1377 (Fed. Cir. 2025) (lower court found no liability but made factual findings pertinent to damages barred from reconsideration on remand); *Respironics v. Zoll Med.*, 656 F. App'x 531, 537 (Fed. Cir. 2016) (IPR decision made "various factual findings about what [prior art] disclosed" but "did not need to apply those factual findings" to render judgment; case remanded for Board "to determine whether [prior art] satisfies the remaining claim limitations").

On remand, a lower court can make additional findings but is not entitled to dispose of its earlier findings on its own initiative. Indeed, a lower court's factual findings unchallenged on appeal become law of the case. *See Sanchez v. Sec'y of Health & Hum. Servs.*, 34 F.4th 1350, 1355 (Fed. Cir. 2022) (special master's finding became "law of the case" because "[t]he government did not challenge this fact finding in the prior appeal"); *Raxton v. Anania Assocs.*, 668 F.2d 622, 624 (1st Cir. 1982) ("Since the district court made a finding in the first trial… and since Rax did not challenge that finding in the first appeal, it became established as the law of the case and Rax forfeited the right to challenge it during the subsequent litigation of this controversy.").

A decision issued during briefing here, which Sony omits, is instructive. *See* Red Br. at vi (Table of Authorities). In *Bitmanagement Software v. United States*, the Court of Federal Claims determined non-infringement but made findings related to damages in a first trial. 124 F.4th at 1372, 1377. This Court vacated the judgment of non-infringement in its entirety and remanded for a determination of damages. *Id*. at 1372. "On remand, in addition to reiterating the findings that were undisturbed by the prior appeal, the Court of Federal Claims made numerous additional, pertinent findings" to determine damages. *Id*. at 1377. In the second appeal, this Court affirmed the CFC properly followed the mandate by adhering to its prior, unchallenged findings on remand:

> [M]any of the findings on which the Court of Federal Claims based its damages award are not (and cannot be) challenged: ***they were findings originally made in connection with the first trial and were before us – but not disturbed by us – in [the prior appeal]***. Hence, as the trial court recognized, ***these findings cannot be challenged*** at this stage.

*Id.* On remand, nothing in the Court's prior opinion "constrained the trial court's freedom to find, ***on the facts before it***, whatever amount of damages was supported by the evidence." *Id.* at 1379.

Sony instead argues that because the Court vacated the first Final Written Decision and remanded, the Board had unfettered discretion to scrap its prior factual findings and start over. Red Br. at 27, 32–33. Sony cites but one decision,

*Integrated Technology v. Rudolph Technologies*, 629 F. App'x 972 (Fed. Cir. 2015), then selectively misquotes it. Red Br. at 27. It asserts that the decision stands for the proposition that "after vacatur, district court 'had to consider anew' the facts on remand." *Id*. The sentence from *Integrated Technology* actually says: "[O]n remand, the district court had to consider anew ***whether the facts*** of the case supported an exceptionality determination under § 285." 629 F. App'x at 976. That decision did not require redoing "the facts" already found by the lower court, let alone override law of the case principles and authorize the lower courts to reconsider prior factual findings that were neither challenged nor disturbed on appeal. *See id*.; *Sanchez*, 34 F.4th at 1355 (finding unchallenged on appeal became "law of the case").

The Board needed to adhere to its initial, unchallenged factual findings while making additional findings on remand to decide whether the claims were patentable. *E.g.*, *Bitmanagement*, 124 F.4th at 1377; *Raxton*, 668 F.2d at 624; *Robotic Vision Sys. v. View Eng'g*, 249 F.3d 1307, 1311 (Fed. Cir. 2001) ("Because that finding was undisturbed by this court in the first appeal, the district court, on remand, properly concluded that Robotic's invention was the subject of a commercial offer for sale before the critical date." (internal citation omitted)).

### C. Sony Fails To Show The Two Findings Are Outside The Judgment And Not Subject To The Mandate Rule

Sony's next gambit is arguing that these findings were outside the mandate because "[t]he 'compressing' limitation thus was not part of the judgment appealed from," Red Br. at 34, before changing tack and asserting that "Sony did in fact appeal the Board's statement as part of the 'generating' appeal," *id.* at 37. Neither position has merit.

#### 1. Both Findings Are Expressly Included In The Board's First Final Written Decision And Subject To The Mandate Rule

Sony claims these factual findings were outside of the judgment because "the Board never reached the 'compressing' limitation in the first decision." Red Br. at 33. This argument withstands no scrutiny because both factual findings were expressly included in the first Final Written Decision, Appx27; Appx30, and thus were "within the scope of the judgment appealed from," Red Br. at 31 (quoting *Engel Indus. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999)); *id*. at 27 (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008)). Indeed, even Sony is forced to admit this: "IPL focuses instead on two prior statements from the first decision…." Red Br. at 36.

Sony was required to challenge any findings it disagreed with in its first appeal. It did not, and now the issue is waived. *Doe v. United States*, 463 F.3d

1314, 1327 (Fed. Cir. 2006) ("Because they did not [raise an issue now argued on appeal in a prior appeal], the issue was waived." (citing *United States v. Husband*, 312 F.3d 247, 250–51 (7th Cir. 2002))); *Amado*, 517 F.3d at 1360.

### 2. Neither Finding Was Reversed On Appeal

#### a. First Finding: Sony Failed To Challenge It And Even Discouraged Appellate Review

> *Board Finding #1: "Wiltshire's disclosure [is] completely silent as to the content or origin of that 'compressed video MPEG stream'" (Appx30)*

Sony quickly pivots to asserting it *did* appeal the Board's first factual finding when it challenged the Board's decision on the "generating" limitation. It repeatedly claims that the factual findings were "made in connection with the 'generating' limitation." Red Br. at 36; *id.* at 30 ("Both statements related to the Board's determination on the 'generating' limitation….").

Sony's argument that this finding pertains only to "generating" does not withstand scrutiny. On its face, the Board's first finding about Wiltshire's "compressed video MPEG stream" is pertinent to the "compressing" limitation. Appx30. Indeed, the Board cited IPL's briefing and expert testimony about the "compressing" step to support its finding. Appx30 (citing Appx436–437 (IPL Patent Owner Response at 27–28); Appx3042–3047 (Hart Decl. ¶¶ 60–68)); *see also* Appx403–448; Appx3041–3042.

Sony's latest argument departs from what it told this Court in the first appeal when it discouraged appellate review of this finding. Sony argued that the Board's first finding that Wiltshire is completely silent about its "compressed video MPEG stream" pertained to the "compressing" limitation. Blue Br. at 35 (citing Appx3491 n.3; Appx3521–3522; Appx3542).

Sony told the Court that IPL's IPR briefing was in a "section about 'compressing'" and thus concerned "other limitations from the '109 Patent claims." Appx3672–3673 (Sony's reply appeal brief citing IPL's Patent Owner Response at what is now Appx433, Appx436). Sony also tried to distinguish paragraphs 63–64 of Dr. Hart's expert declaration because it addressed "a different limitation—the 'compressing' limitation." Appx3685 (discussing Appx3044 (Hart Decl. ¶¶ 63–64)); *see also* Appx3491 n.3 (distinguishing Dr. Hart's paragraph 62–63 testimony "about a ***different*** claim limitation ('compressing') and not the limitation at issue ('generating').") (emphasis in original); Appx3521–3522 (similar); Appx3542 (similar).

Not only did Sony never appeal this finding, but it waived any allegation of error in the Board's finding. In the first appeal, IPL pointed out that substantial evidence supported the Board's finding that Wiltshire was silent about the content or origin of the "compressed video MPEG stream." Appx3649 (quoting Appx30). Sony had no response on reply. *See, e.g.*, Appx3684–3685; *see also* Appx3655–

3688; *CardSoft v. VeriFone*, 807 F.3d 1346, 1353 (Fed. Cir. 2015) (finding waiver and concession where party "did not respond to… argument in its responsive brief on appeal").

Challenging another Board finding that "Wiltshire did not generate images at the server and that Doom was not part of Figure 2," Red Br. at 37 (citing Appx3530–3541; Appx3539–3540), does not address the Board's finding that "Wiltshire's disclosure is completely silent as to the content or origin of that 'compressed video MPEG stream,'" Appx30 (cleaned up).

Even if Sony were now correct that this finding exclusively addressed "generating," judicial estoppel bars Sony's abrupt change of tactics. *E.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (Judicial estoppel's "purpose is 'to protect the integrity of the judicial process' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" (citations omitted)).

Sony essentially has no answer for its position change. It drops a footnote asserting that Sony did not intend to "'discourag[e]' appellate review" of "the Board's findings," but provides no authority or record evidence supporting its conduct. *See* Red Br. at 42 n.2 (citing Blue Br. at 35).

Now scrambling to assert that it disputed findings about the "compressing" limitation in the first appeal, Sony resorts to citing IPL's briefing. Red Br. at 38

(citing Appx3649 (IPL's response brief in first appeal)). A party does not preserve its appellate rights by relying on the other side's briefing. *Amoco Oil v. United States*, 234 F.3d 1374, 1377 (Fed. Cir. 2000) ("[A] party must raise in its opening brief all issues it wishes to challenge, and should not rely on an opponent to raise them.").

Finally, Sony attempts to distinguish IPL's cases[1] on the basis that "most… involved situations in which the party could have—but did not—appeal issues actually decided by the lower tribunal." Red Br. at 44; *id.* at 45–49. That is exactly what happened here when Sony declined to appeal the Board's factual findings in the first appeal. *See* Appx3492–3493 (Statement of Issues on Appeal); *see also* Appx3476–3546.

Despite Sony's assertion to the contrary, *Cardiac Pacemakers v. St. Jude Medical* did not turn on the language of the remand and instead was reversed "in light of the jury's verdict and our previous mandates unique to this case." 576 F.3d 1348, 1357 (Fed. Cir. 2009); *see also HPI/GSA 3C, LLC v. Perry*, 364 F.3d

[1] *Doe v. United States,* 463 F.3d 1314, 1327 (Fed. Cir. 2006); *United States v. Husband*, 312 F.3d 247, 250–51 (7th Cir. 2002); *Retractable Tech. v. Becton Dickinson*, 757 F.3d 1366, 1368–71 (Fed. Cir. 2014); *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008); *Engel Indus. v. Lockformer Co*, 166 F.3d 1379, 1383 (Fed. Cir. 1999); *Robotic Vision Sys. v. View Eng'g*, 249 F.3d 1307, 1311 (Fed. Cir. 2001); *Williamsburg Wax Museum v. Historic Figures*, 810 F.2d 243, 250 (D.C. Cir. 1987).

1327, 1333–34 (Fed. Cir. 2004) (holding that "this conclusion by the Board [regarding a $40 zone charge] remains undisturbed on remand" because "neither party disputed" it on appeal); *Hayward Indus. v. Pentair Water Pool & Spa*, 814 F. App'x 592, 597–98 (Fed. Cir. 2020) (holding that the Board's findings "do not relate to the 'optimize energy consumption' limitation ***and instead revisit the question of whether Discenzo teaches the two modes, which we decided in*** **Hayward I**"). Sony cannot escape the mandate rule or this Court's precedent.

#### b. Second Finding: This Court Acknowledged And Did Not Disturb It

> *Board Finding #2: "We find nothing in Wiltshire to suggest that a person of ordinary skill in the art would have understood that Wiltshire's system could possibly have supported [Doom] in the manner proposed by petitioner" (Appx27)*

Sony devotes pages of its briefing to searching for either a nexus between this second Board finding and the "generating" limitation or a record cite where it challenged this factual finding in the first appeal. Red Br. at 40–41. Both are irrelevant because this Court twice expressly acknowledged the Board's factual finding that Wiltshire lacks any teaching how its Figure 2 system would apply to Doom. *See* Appx43 ("[T]he Board… found 'nothing in Wiltshire to suggest that a person of ordinary skill in the art would have understood that Wiltshire's system could possibly have supported [Doom] in the manner.'" (quoting Appx27));

Appx44 (quoting same); Appx43 ("'Wiltshire's disclosure only provides details as to how its system is used to implement casino games….'" (quoting Appx27)).

Sony asserts that "the Court expressly found the Board ***erred*** in making this statement." Red Br. at 41 (emphasis in original) (quoting Appx43–44: "[t]he Board erred in its interpretation of Wiltshire"). But its support for the alleged error, Appx43, is a page before "this statement": "we find nothing in Wiltshire to suggest that a person of ordinary skill in the art would have understood that Wiltshire's system could possibly have supported [Doom] in the manner proposed by petitioner," Appx44 (cleaned up). After noting the Board's finding, the Court continues: "But that does not mean that Wiltshire does not disclose applying the system of Wiltshire to a game like Doom." Appx44. Rather than "expressly" overturning the finding, the Court remanded for further analysis in view of these facts. *See* Appx44–45.

### D. Reversal Is Required Because The Board Could Not Have Found Wiltshire Disclosed The "Compressing" Limitation Had It Followed The Mandate

At Sony's urging, the Board departed from the mandate rule in its second Final Written Decision. It decided that "the logical conclusion from the Federal Circuit's reasoning" was that it must reverse its prior findings about Wiltshire and then did exactly that. Appx93.

Sony inaccurately asserts that "IPL notably never takes issue with the Board's logical reasoning." Red Br. at 53. This is another strawman. The Board's flawed logic is a central argument in this appeal. Blue Br. at 31–33, 46–55. On remand, even if Wiltshire's Figure 2 applied to Doom, and even if Doom required generating new images, the Board articulated no reason why it was required to reverse its prior findings relating to "compressing." *See* Appx91–93. The Board cites nothing in Wiltshire to support reversing its factual finding. *See id*. The Board's "logic" does not substitute for Wiltshire's actual disclosure. *In re Pardo*, 684 F.2d 912, 917 (C.C.P.A. 1982) (PTO Board of Appeals' reliance "on its own logic" did not excuse failing to "determine the scope and content of the prior art.").

Remand would be superfluous. The only way the Board could find Wiltshire disclosed "compressing" was by violating the mandate and overturning its own unchallenged and undisturbed findings about Wiltshire from the first Final Written Decision. *See* Appx91–93. The following section shows that none of the Board's contrary findings in the second Final Written Decision were supported by Wiltshire's disclosure or substantial evidence.

This Court should reverse. *Sanchez*, 34 F.4th at 1355 ("This is an unusual case where a remand is unnecessary because here the special master's finding… is law of the case. The government did not challenge this fact finding in the prior

appeal. The earlier findings stand and the special master's findings… cannot be reconciled with his earlier determinations."); *Husband*, 312 F.3d at 250–51 ("[A]ny issue that could have been but was not raised on appeal is waived and thus not remanded.").

### E. Sony Musters No Substantial Evidence Supporting The Board's New Unpatentability Determination In The Second Final Written Decision

Even ignoring the mandate rule, the Board's unpatentability finding must also be reversed for a second, independent reason: it lacks substantial evidence.

Sony does not contest that it had the burden to prove that Wiltshire disclosed compressing newly generated images. *See* Red Br. at 53–57; Blue Br. at 43 (collecting cases). Nor does it dispute that its sole unpatentability theory was that Wiltshire discloses the "compressing" limitation. *See* Red Br. at 53–57; Appx194–195 (Petition asserting "Wiltshire discloses" the limitation); *see also* Appx162–244.

The Board found in the first Final Written Decision that Wiltshire was "completely silent" about the content of the "compressed video MPEG stream" in column 7. Appx30. Its abrupt reversal in the second Final Written Decision that Wiltshire teaches compressing newly generated images in Doom needs substantial evidence. Appx91–93. Sony neither disputes that nor points to any

substantial evidence showing Wiltshire disclosed the "compressing" limitation. Red Br. at 53–57; *see also* Appx856–912 (remand briefing).

### 1. Sony Offers No Substantial Evidence

IPL's opening brief explained in detail that the second Final Written Decision's citations to Wiltshire and Dr. Fuchs do not provide substantial evidence supporting Sony's burden to prove that Wiltshire taught "compressing" newly generated images. Blue Br. at 46–55. Specifically, the briefing explained why Wiltshire's text (columns 7:13–18, 7:62–64, and Fig. 2) and Dr. Fuchs' testimony (¶¶ 44, 46, 47–50) provide no substantial evidence for the Board's decision. Blue Br. at 47–50.

In response, Sony points to the ***same*** record cites: Wiltshire's columns 7:13–18, 7:62–64, and Fig. 2 and Dr. Fuchs' testimony at ¶¶ 46, 49–50. Red Br. at 54–55. Nowhere does Sony explain how any of these show that Wiltshire taught compressing newly generated images. *See id*.

Sony cites to the Board's "logical conclusion" discussion, Red Br. at 55 (citing Appx93), but that lacks any citations to Wiltshire's disclosure, *see* Appx93, which is unsurprising because Wiltshire did not disclose compressing newly generated images, *see* Appx1332–1358. Sony next resorts to Dr. Fuchs' reliance on the Levoy article, Red Br. at 55–56, but that only exposes Wiltshire's silence. *E.g.*, *Intel Corp. v. PACT XPP Schweiz*, No. 2023-1537, 2024 WL

5068112, at *1 (Fed. Cir. Dec. 11, 2024) (unpublished) (The Board did not err in finding "Intel relied on Cline to supply a missing claim limitation… not taught by either Nicol or Bhatia, rather than, as Intel argued, to describe the state of the art.").

Sony's inability to muster any substantial evidence or show how these well-trodden passages in Wiltshire amount to an actual disclosure of "compressing" newly generated images reveals that Sony has nothing, and the Board's second Final Written Decision must be reversed. *In re NTP*, 654 F.3d 1279, 1302 (Fed. Cir. 2011) (Prior art "Telenor is silent about the removal of information; thus, substantial evidence does not support the Board's fact-finding….").

### 2. Sony Fails To Rebut IPL's Arguments On The Lack of Substantial Evidence

Sony next submits a lengthy section responding to IPL's points that the Board's finding is unsupported by Wiltshire's actual disclosure. Red Br. at 57–66. Attorney argument and sheer verbosity, however, do not substitute for substantial evidence. *Icon Health & Fitness v. Strava*, 849 F.3d 1034, 1043 (Fed. Cir. 2017) ("Attorney argument is not evidence."). Here also Sony fails to flag anything in the record showing that Wiltshire discloses compressing newly generated images. *See* Red Br. at 57–66. For the sake of completeness, IPL now responds to each of Sony's contentions.

***First***, Sony relies on the Board rejecting IPL's point that Wiltshire "does not disclose real-time compression." Red Br. at 57–58. That error, where the Board resorted to substituting to its own "logic" for Wiltshire's actual teachings, is why this decision is up on appeal. *See In re Zurko*, 258 F.3d 1379, 1386 (Fed. Cir. 2001) ("With respect to core factual findings in a determination of patentability, however, the Board cannot simply reach conclusions based on its own understanding…. Rather, the Board must point to some concrete evidence in the record in support of these findings."). Hiding behind the Board's error does not supply Sony with the missing substantial evidence.

Sony's unsupported assertion that "us[ing] pre-existing MPEG files" is "nowhere in Wiltshire," Red Br. at 58, is undone by Wiltshire's column 7:15–18 that expressly, and undisputably, teaches a preexisting "***encoded*** audio/video stream such as a compressed video MPEG stream." Appx1355 (7:15–18); Appx3044–3045 (¶¶ 64–65) (unrebutted Hart testimony); *see also* Blue Br. at 48.

***Second***, Sony now invokes its own logic to dispute that Wiltshire's video MPEG stream "is pre-stored or pre-encoded." Red Br. at 58–59. This new attorney argument was not raised below, and Sony cites nothing from its IPR briefing showing otherwise. *See id*. Accordingly, it is waived. *Samsung Elecs. v. Infobridge*, 929 F.3d 1363, 1370 (Fed. Cir. 2019) (arguments not presented to the Board are waived on appeal).

Even if considered, Sony's new position that a "video MPEG stream" is "a type of image," Red Br. at 58, flies in the face of Wiltshire's actual text which describes it as "an encoded audio/video stream":

> The image may include any type of graphical information including a bitmap, a JPEG file, a TIFF file or even ***an encoded audio/video stream such as a compressed video MPEG stream***.

Appx1355 (7:15–18). Dr. Hart's expert testimony confirming that Wiltshire's column 7:15–18 referred to a preexisting video MPEG stream was undisputed below. *See* Blue Br. at 48 (citing Appx3044–3045 (Hart Decl. ¶¶ 64–65); Appx2325–2329 (Fuchs Decl. ¶¶ 48–53)). The Board should have credited Dr. Hart's unrebutted expert testimony on remand. *Univ. of Strathclyde v. Clear-Vu Lighting*, 17 F.4th 155, 163–66 (Fed. Cir. 2021) (reversing the Board's obviousness determination where it failed to credit unrebutted expert testimony).

***Third***, Sony claims that Dr. Hart's testimony about column 7:15–18 was "directly refut[ed]" by Dr. Fuchs. Red Br. at 59 (citing Appx2323–2327 (Fuchs Decl. ¶¶ 45–47, 49)). As explained, Dr. Fuchs never responded to Dr. Hart on this point. Appx2323–2327 (Fuchs Decl. ¶¶ 45–47, 49) (failing to address Dr. Hart's ¶ 64 opinion); Blue Br. at 48; *see also* Appx2317–2329. Sony now claims that, inherently, Wiltshire's "video stream ***must be*** dynamically generated," Red Br. at 59, but still fails to show that Doom requires compression, Appx2326–2327 (Fuchs Decl. ¶ 49); Blue Br. at 44–45, 51–53.

***Fourth***, Sony pivots back to addressing Wiltshire's column 7:62–64, arguing without citation that Wiltshire "clearly discloses" data compression of newly generated images. Red Br. at 60. Again, this is all Wiltshire says at column 7:62–64:

> This bandwidth requirement can be further reduced using data compression techniques to about 100 KB/sec.

Appx1355 (7:62–64); *see also* Blue Br. at 40–41, 49–50. Sony's chain of inferences only undercuts its claim that Wiltshire "clearly discloses" what is compressed and fails to provide substantial evidence that Wiltshire's compression applies to newly generated images. *See* Red Br. at 60; *OSI Pharms. v. Apotex*, 939 F.3d 1375, 1382 (Fed. Cir. 2019) ("'Mere speculation' is not substantial evidence.").

***Fifth***, Sony asserts that Dr. Fuchs' testimony was "never addressed, much less repudiated, in the first decision." Red Br. at 60. It was both addressed and repudiated. Appx24–25 ("We do not find Dr. Fuchs's testimony persuasive…. Instead, we find persuasive Dr. Hart's testimony…."). Regardless, Dr. Fuchs' testimony provides no substantial evidence, and the Board erred by relying on it on remand. *See* Blue Br. at 50–55.

***Sixth***, Sony complains IPL "misstates" Dr. Fuchs' testimony about Doom and compression. Red Br. at 61 (citing Appx2326–2327 (Fuchs Decl. ¶ 49)). Yet

Sony stops short of affirmatively representing that Dr. Fuchs explained why Doom's video stream was compressed. *See id*. Indeed, Dr. Fuchs only testified that Doom requires "dynamically generated" video streams, not compression:

> The video stream must be dynamically generated because Wiltshire['s] system must be capable of playing real-time interactive games like Doom.

Appx2326–2327 (Fuchs Decl. ¶ 49). Sony's complaints about misstating expert testimony are pure projection. *Philip Morris Prods. v. Int'l Trade Comm'n*, 63 F.4th 1328, 1347 (Fed. Cir. 2023) ("Phillip Morris does not accurately represent this [expert] testimony… [which] does not support Phillip Morris's assertion.").

***Seventh***, Sony returns to invoking Saha (Appx1359–1374) and Levoy (Appx1649–1656) to support the Board's decision about Wiltshire's disclosure. Red Br. at 62–63; *supra* § II.E.1. Sony cites *Ariosa* and attempts to distinguish *Medtronic* to argue the Board relied on these references to supply the knowledge of a skilled artisan. Red Br. at 62–63 (citing *Ariosa v. Verinata Health*, 805 F.3d 1359, 1365 (Fed. Cir. 2015); *Medtronic v. Teleflex Life Scis.*, No. 2022-1605, 2024 WL 1208642 (Fed. Cir. Mar. 21, 2024) (unpublished)).

That's not what happened here. Sony's petition solely relied on Wiltshire's disclosure, not a modification of Wiltshire's disclosure. Appx194–195 (asserting "Wiltshire discloses" the "compressing" limitation). Here the Board improperly relied on Levoy's teaching of "real-time image compression" to supply a missing

claim limitation, recognizing that neither Wiltshire nor Saha disclosed it. *See* Appx91 (relying on Levoy only: "real-time image compression" was known "as evidenced by the Levoy article"); Appx440 (citing Appx1366 (EX1005 at 2:60–61); Appx3047–3052 (Hart Decl. ¶¶ 69–79)); Blue Br. at 52–53; *Intel*, 2024 WL 5068112, at *1 (The Board did not err in finding "Intel relied on Cline to supply a missing claim limitation… not taught by either Nicol or Bhatia, rather than, as Intel argued, to describe the state of the art."); *Medtronic*, 2024 WL 1208642, at *8 (The Board correctly "evaluated the obviousness arguments [the petition] presented over Kontos alone, which were based on the express teachings of Kontos," and not "the broader teachings of Kontos and a skilled artisan's creativity and common sense.").

Sony quickly pivots from Levoy to its disproven argument that Wiltshire's "express disclosures" at columns 7:13–18 and 7:62–64 supply substantial evidence, *see* Red Br. at 63; Blue Br. at 36–41, effectively conceding that the Board erred here by relying on Levoy.

***Eighth***, Sony attempts to distract from its failure to establish that Doom requires compression by asserting that IPL's argument "misses the point." Red Br. at 63–64. Actually, that is the point. Sony's burden required it to show on remand that Wiltshire discloses compressing newly generated images. *In re*

*Magnum Oil Tools Int'l*, 829 F.3d 1364, 1375 (Fed. Cir. 2016). It failed. Blue Br. at 46–55.

Apparently finding itself in a hole, Sony keeps digging. It next baldly asserts: "When Doom is applied to Figure 2, there is no dispute that the images are dynamically generated." Red Br. at 64. But whether the images are dynamically generated does not address whether they are compressed. Appx3668 (Sony: "[T]hat testimony was about a different claim step—the 'compressing' step—that comes ***after*** the 'generating' step." (emphasis in original)).

Arguing that pointing out Wiltshire's lack of disclosure "misses the point" or claiming Wiltshire's teachings are "undisputed" only reinforces Sony's failure to meet its burden and the Board's error in finding otherwise. *See* Red Br. at 63–64.

***Finally***, Sony revisits the well-trodden paragraphs 46, 47, and 49 of Dr. Fuchs' testimony. *See* Red Br. at 64–66. As discussed, the conclusory and incomplete statements there do not provide the missing substantial evidence. *E.g.*, Blue Br. at 50–55; *TQ Delta v. CISCO Sys.*, 942 F.3d 1352, 1359 (Fed. Cir. 2019) ("conclusory expert testimony" inadequate to show "substantial evidence"). Sony's parting argument that "Dr. Fuchs' testimony follows from the express disclosures of Wiltshire," Red Br. at 66, only concedes that Dr. Fuchs is well beyond Wiltshire's deficient disclosure, *see* Blue Br. at 36–41, 46-55.

## III. CONCLUSION

For these reasons and those in IPL's opening brief, the Board's conclusion that '109 Patent Claims 1–12 would have been obvious should be reversed.

Respectfully submitted,

ARMOND WILSON LLP

Dated: March 12, 2025

By: /s/ *Douglas R. Wilson*
Douglas R. Wilson

*Attorney for Appellant*
*Intellectual Pixels Limited*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Circuit Rule 32(b). This brief contains 4,996 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This Brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

ARMOND WILSON LLP

Dated: March 12, 2025

By: /s/ *Douglas R. Wilson*
Douglas R. Wilson

*Attorney for Appellant*
*Intellectual Pixels Limited*